UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DAVID VINCENT CARSON,

Plaintiff,

v.

F. MARTINEZ, C. GODINEZ, A. SILVA, A. LAROCCO, R. NEVAREZ, D. GARCIA, D. ARGUILEZ, P. BRACAMONTE, K.A. SEIBEL, R. OLSON, J. RAMIREZ, DR. G. CASIAN, J. LEWIS,  AND JOHN DOES 1-2,

Defendants.

Case No.:  16cv1736-JLS (BLM)

**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

**[ECF No. 18]**

This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(e) and 72.3(f) of the United States District Court for the Southern District of California.  For the following reasons, the Court **RECOMMENDS** that Defendants' motions to dismiss be **GRANTED**.

## PROCEDURAL BACKGROUND

On July 5, 2016, Plaintiff David Carson, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint under the Civil Rights Act, 42 U.S.C. § 1983, against Defendants F. Martinez, C. Godinez, A. Silva, A. LaRocco, R. Nevarez, D. Garcia, John Does 1-2, D. Arguilez, P. Bracamonte, K.A. Seibel, R. Olson, J. Ramirez, Dr. G. Casian, and J. Lewis.  ECF No. 1 ("Comp.").

Plaintiff alleged claims under the First, Fifth, Eighth and Fourteenth Amendments. Id. at 2, 13-17. On July 11, 2016, Plaintiff filed a Motion for Leave to Proceed *In Forma Pauperis*. ECF No. 2. On August 15, 2016, Plaintiff's motion was granted. ECF No. 3. In the order granting Plaintiff's motion, the Court also dismissed all claims against Defendants Olson, Ramirez, and Lewis pursuant to 28 U.S.C. § § 1915(e)(2) and 1915A(b). Id. at 1, 5-7. On November 21, 2016, Plaintiff filed a Motion for Discovery, which the Court accepted on discrepancy on November 30, 2016. ECF Nos. 15-17. In his motion, Plaintiff sought an order requiring the "Attorney General [or the Litigation Coordinator] to furnish the [USMS] with [Defendant Nevarez's] address information" so that he may be served. ECF No. 16 at 2; see also ECF No. 17 at 2. The Court interpreted Plaintiff's motion as a confidential address request and granted the motion on December 1, 2016. ECF No. 17.

On December 6, 2016, Defendants F. Martinez, C. Godinez, A. Silva, A. LaRocco, D. Garcia, D. Arguilez, P. Bracamonte, K.A. Seibel, and Dr. G. Casian filed a Motion to Dismiss the Complaint for Failure to State a Claim against Defendants R. Nevarez, D. Arguilez, P. Bracamonte, and K.A. Seibel. ECF No. 18-1 ("MTD"). On that same day, the Court set a briefing schedule ordering Plaintiff to file his opposition to Defendants' motion to dismiss on or before January 10, 2017, and Defendants to file their reply on or before February 7, 2017. ECF No. 20. On January 5, 2017, Plaintiff submitted a motion for a thirty-day extension of time to respond to Defendants' motion to dismiss that was accepted by the Court on discrepancy on January 18, 2017. ECF Nos. 22-24. On January 19, 2017, the Court granted Plaintiff's motion and ordered that his opposition be filed on or before February 10, 2017, and that Defendants respond on or before February 28, 2017. ECF No. 24. Plaintiff timely filed his opposition on February 10, 2017 [ECF No. 25 ("Oppo.")], although the Court did not receive the opposition until February 27, 2017. Defendants did not file a reply. See Docket.

## COMPLAINT ALLEGATIONS

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint, and must construe the complaint and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff. See Thompson

16cv1736-JLS (BLM)

v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).

According to the Complaint, Plaintiff (1) was retaliated against for exercising his right to free speech, (2) was denied due process and full access to administrative remedies, (3) suffered cruel and unusual punishment, and (4) was denied adequate medical care. Comp. at 13-17. Specifically, Plaintiff alleges that Defendant Martinez began harassing him in November of 2013 by subjecting him to excessive body and cell searches, restricting him to his cell, and denying him access to various recreational activities. Id. at 4. After Plaintiff complained to Defendant Martinez's supervisors, Defendant Martinez threatened Plaintiff[1], manufactured a false Prison Rule Violation Report concerning Plaintiff, and subjected Plaintiff to daily body and cell searches. Id. Plaintiff complained again to Defendant Martinez's supervisors and soon thereafter, his cell was searched by Defendant Godinez who took Plaintiff's food storage container and personal drawing, and left Plaintiff's remaining property strewn about and damaged. Id. Defendant Godinez allegedly told Plaintiff's cellmate, Mr. Crawford, that the search was directed only towards Plaintiff. Id. at 4, Exh. A at 15. Defendant Godinez gave Plaintiff a cell search slip that failed to include the names of Defendant Godinez or his partners and the missing food storage container and personal drawing, and that also falsely identified contraband (an inmate manufactured lighter) that had been removed from Plaintiff's cell. Id. at 5. Plaintiff explained that the alleged contraband was only a battery holder and requested the return of his property, to which Defendant Godinez stated "Are you going to tell on me too? Go 602 it snitch." Id. at 5, Exh. A at 12. Plaintiff later gave Defendant Godinez a "Form 22 Request for Interview, Item, or Service" in which he requested (1) the return of his property, (2) that Defendant Godinez place his name on the cell search slip, and (3) that he no longer be subjected to threats, punishment, harassment, or retaliation. Id. Defendant Godinez did not grant Plaintiff's requests and soon thereafter Defendant Martinez approached Plaintiff and asked him "how's the complaint thing working out for ya?" as he walked away laughing. Id. On November 30, 2013, Plaintiff filed an appeal seeking the return of his property, the punishment of Defendant Godinez,

[1] Defendant Martinez told Plaintiff "I'm going to get you." Comp. at 4.

and that the retaliation against him be stopped.  Id. at 6, Exh. A at 6.  Plaintiff alleges that his appeal was obstructed for thirty-two days by R. Olson and J. Ramirez who rejected and later cancelled the appeal.  Id. at 6, Exh. A at 17.  After numerous attempts by Plaintiff to appeal the cancellation of his appeal, Plaintiff was told by R. Olson that he would never "get anything granted cause [he was] a pain in the ass."  Id. at 6-7.

Plaintiff further alleges that on February 7, 2014, he suffered cruel and unusual punishment when (1) Defendants LaRocco, Silva, and Nevarez used excessive physical force against him amounting to assault and battery, (2) Defendant Garcia failed to intervene and stop Defendants LaRocco and Silva, and (3) Defendants Arguilez, Bracamonte, and Seibel failed to adequately train and supervise their subordinate officers.  Id. at 15.  Plaintiff claims that on the morning of February 7, 2014, during breakfast, he noticed he was being watched by several correctional officers.  Id. at 7.  As he went to leave the eating area, another inmate whom Plaintiff had been eating with was stopped by Defendant Silva.  Id.  Defendant Silva then told Defendant LaRocco to get Plaintiff who stopped walking as directed.  Id.  Defendant LaRocco ordered Plaintiff to "face workchange," place his hands behind his back, and interlace his fingers all of which Plaintiff did.  Id.  Plaintiff alleges Defendant LaRocco then slammed his hand into Plaintiff's right shoulder and forced Plaintiff to the ground while stating "I got you now you fucking weasel."  Id. at 8.  At this time an announcement was made over the public address system telling everyone to get down as an alarm rang.  Id.  Despite Plaintiff telling Defendant LaRocco that he was trying to get down, but needed to move slowly due to his bad back and neck, Defendant LaRocco ordered Plaintiff to "Prone out."  Id.  At this moment, Defendant Silva tackled Plaintiff from the left, placed his knee in Plaintiff's back, and bounced up and down while wrenching Plaintiff's left arm toward the sky.  Id.  Defendant Silva continued bouncing and placed Plaintiff in restraints despite Plaintiff screaming that he was being hurt and knowing that Plaintiff was an inmate in the High Risk Medical Yard.  Id.

Plaintiff filed a complaint against Defendants LaRocco and Silva for unnecessary use of force, but was told by Defendant Arguilez during his interview that he "may go to the hole depending on what you say about my officers."  Id. at 9.  On February 7, 2014, Defendants

LaRocco, Silva, and Nevarez submitted fabricated Crime Incident Reports stating that Plaintiff had refused to follow orders and resisted staff necessitating the use of force.  Id. at 9, Exh. D. Defendant Silva also filed a fabricated Resisting a Peace Officer in the performance of His Duties form against Plaintiff.[2]  Id. at 9, Exh. F. Defendants LaRocco, Silva, and Nevarez were later cleared of any wrongdoing by Defendants Arguilez and Seibel.  Id.  On February 13, 2014, Plaintiff filed another complaint alleging that he was assaulted by Defendants LaRocco and Silva in retaliation for filing previous complaints.  While on suicide watch, Plaintiff was interviewed telephonically about the allegations by Defendant Bracamonte who ultimately found that Defendants LaRocco and Silva's use of force was appropriate.  Id.  Defendant Seibel concurred with Defendant Bracamonte's findings.  Id. at 10, at 9, Exh. G at 78-79.

## **LEGAL STANDARD**

Pursuant to Fed. R. Civ. P 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. See Fed. R. Civ. P. 12(b)(6).  The issue is not whether the plaintiff ultimately will prevail, but whether he has properly stated a claim upon which relief could be granted.  Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003).  In order to survive a motion to dismiss, the plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  If the facts alleged in the complaint are "merely consistent with" the defendant's liability, the plaintiff has not satisfied the plausibility standard.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal,

---

[2] Plaintiff was later found not guilty by Lieutenant S. Rink.  Comp. at 9, Exh. H.

556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002).  This rule of liberal construction is "particularly important" in civil rights cases.  <u>Hendon v. Ramsey</u>, 528 F. Supp. 2d 1058, 1063 (S.D. Cal. 2007) (citing <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992)); <u>see also</u> <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010) (stating that because "Iqbal incorporated the Twombly pleading standard and Twombly did not alter the courts' treatment of pro se filings; accordingly we continue to construe pro se filings liberally . . . ."  This is particularly important where the petitioner is a *pro se* prisoner litigant in a civil matter).  When giving liberal construction to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim[] that were not initially pled."  <u>Easter v. CDC</u>, 694 F. Supp. 2d 1177, 1183 (S.D. Cal. 2010) (quoting <u>Ivey v. Bd. of Regents of the Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982)).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  <u>Id.</u> (quoting <u>Ivey</u>, 673 F.2d at 268).

The court should allow a *pro se* plaintiff leave to amend his or her complaint, "unless the pleading could not possibly be cured by the allegation of other facts."  <u>Ramirez v. Galaza</u>, 334 F.3d 850, 861 (9th Cir. 2003) (internal quotation marks and citations omitted).  Moreover, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively."  <u>Ferdik</u>, 963 F.2d at 1261.

To state a claim under § 1983, a plaintiff must allege facts sufficient to show that (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some "rights, privileges, or immunities" protected by the Constitution of the laws of the United States.  42 U.S.C. § 1983.  To prevail on a § 1983 claim, "a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of the defendant."  <u>Harris v. Schriro</u>,

652 F. Supp. 2d 1024, 1034 (D. Ariz. 2009) (citation omitted).  A particular defendant is liable under § 1983 only when the plaintiff proves he participated in the alleged violation.  Id.

Supervisor Liability

To state a claim for a constitutional violation under Section 1983, a plaintiff "must plead facts sufficient to show that [his] claim has substantive plausibility." Johnson v. City of Shelby, 135 S.Ct. 346, 347 (2014) (citing Bell Atlantic Corp., 550 U.S. at 544; Ashcroft, 556 U.S. at 662). Government officials are not liable under § 1983 for their subordinates' unconstitutional conduct based on *respondeat superior* or another theory of vicarious liability, and plaintiff is required to plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." See Iqbal, 556 U.S. at 676 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (finding no vicarious liability for a "municipal person" under 42 U.S.C. § 1983)).

A supervisor may be individually liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). To be held liable, a supervisor need not be physically present when the alleged constitutional injury occurs nor be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." Starr, 652 F.3d at 1205 (citation omitted).  Rather, the requisite causal connection is established when a supervisor "set[s] in motion a series of acts by others," or "knowingly refus[es] to terminate a series of acts by others which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." Id. at 1207-08 (citation omitted).  A supervisor may also be held liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates, . . . acquiescence in the constitutional deprivation," or "conduct that showed a reckless or callous indifference to the rights of others." Id. at 1208 (citation omitted).  Additionally, a supervisor may be held liable if he implements a "policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Hansen, 885 F.2d

7

at 646 (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiff alleges that Defendants retaliated against him for exercising his right to free speech, denied him due process and full access to administrative remedies, denied him adequate medical care, and inflicted cruel and unusual punishment in violation of his First, Eighth, and Fourteenth Amendment rights. Comp. Plaintiff seeks declaratory and injunctive relief and monetary damages for actual injury, pain, suffering, and psychological distress. Id. at 1-2.

Defendants move to dismiss Plaintiff's claims against Defendants R. Nevarez, D. Arguilez, P. Bracamonte, and K.A. Seibel on the ground that Plaintiff's complaint fails to state a claim for relief.[3] MTD. In his opposition to Defendants' motion, Plaintiff agrees that the claims against Defendants Seibel and Bracamonte should be dismissed, but argues that Defendants Arguilez and Nevarez should remain in the case. Oppo. at 3-10.

### A. Defendant Seibel

Plaintiff alleges that Defendant Seibel violated his Eighth Amendment right to be free from cruel and unusual punishment by "failing to adequately train and supervise officers subordinate to [him] and by failing to properly investigate the incident or discipline the involved officers." Comp. at 15. Defendants state that Plaintiff has failed to state a claim against Defendant Seibel because there are no factual allegations against Defendant Seibel other than his position as a supervisor and Defendant Seibel may not be liable on a theory of supervisory liability. MTD at 4. In his opposition, Plaintiff concedes that the claims against Defendant Seibel should be dismissed as there is no *respondeat superior* liability. Oppo. at 3. Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Eighth Amendment claim against Defendant Seibel be **GRANTED WITHOUT LEAVE TO AMEND**.

### B. Defendant Bracamonte

Plaintiff alleges that Defendant Bracamonte violated his right to be free from cruel and

---

[3] The claims against Defendants Casian, Martinez, LaRocco, Godinez, Silva, and Garcia and the Doe Defendants are not being challenged in this Motion to Dismiss. MTD.

unusual punishment by failing to properly train and supervise subordinate officers and by failing to properly investigate his assault or discipline the officers involved. Comp. at 15. Defendants contend that Plaintiff has failed to state a claim against Defendant Bracamonte and that Defendant Bracamonte cannot be held liable on a theory of *respondeat superior*. MTD at 5. In his opposition, Plaintiff concedes that the claims against Defendant Bracamonte should be dismissed as there is no *respondeat superior* liability. Oppo. at 3. Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Eighth Amendment claim against Defendant Bracamonte be **GRANTED WITHOUT LEAVE TO AMEND**.

### C. Defendant Arguilez

Plaintiff alleges that Defendant Arguilez violated his right to be free from cruel and unusual punishment by failing to properly train and supervise subordinate officers and by failing to properly investigate his assault and discipline the officers involved. Comp. at 15. Defendants contend that Plaintiff has failed to state a claim against Defendant Arguilez because Plaintiff merely alleges that Defendant Arguilez supervised the officers involved in the use of force and liability cannot be premised on *respondeat superior*. MTD at 5. Defendants also argue that Plaintiff's allegation that Defendant Arguilez threatened to send Plaintiff to the hole is insufficient to demonstrate Defendant Arguilez's personal involvement in the alleged incident. Id. Because Defendant Arguilez was not a part of the use of force and is not liable on a theory of *respondeat superior*, Defendants argue that Plaintiff's claims against Defendant Arguilez should be dismissed. Id. Plaintiff responds that Defendant Arguilez should not be dismissed from the action because he turned a blind eye to the constitutional violations Plaintiff suffered at the hands of Defendant Arguilez's subordinate officers and personally retaliated and conspired against Plaintiff. Oppo. at 3-5.

Plaintiff's Complaint names Defendant Arguilez in his individual capacity and asserts that he violated Plaintiff's right to be free from cruel and unusual punishment. Comp. at 3, 9, and 15. Plaintiff describes Defendant Arguilez as a Correctional Lieutenant in charge of training, supervising, and disciplining officers employed at RJ Donovan Correctional Facility. Id. at 3. Plaintiff alleges that Defendant Arguilez is liable for violating his constitutional rights because

16cv1736-JLS (BLM)

while interviewing Plaintiff about his claims regarding the use of unnecessary force, Defendant Arguilez threatened to send Plaintiff to the "hole" depending upon what Plaintiff said about Defendant Arguilez's officers. Id. at 9; see also Oppo. at 4. Plaintiff further alleges that Defendant Arguilez videotaped interviews with several inmates who witnessed Plaintiff's alleged assault, but covered up those interviews and omitted them from his final report in an attempt to cover up his officers' use of unnecessary force against Plaintiff. Id.; see also Comp. at Exh. E and Oppo. at 3-4. Plaintiff notes that Defendant Arguilez drafted a summary of the incident and cleared Defendants Silva and LaRocco of any wrongdoing, and alleges that Defendant Arguilez was complicit in the assault on Plaintiff due to his inaction, suppression of evidence, and deliberate indifference. Comp. at 9; see also Comp. at Exh. D at 38-40, and Oppo. at 4. Finally, Plaintiff argues that Defendant Arguilez was personally involved in his assault because he (1) failed to remedy the problem once he was informed of the incident, (2) was grossly negligent in supervising the subordinate officers who attacked him, and (3) exhibited deliberate indifference when he failed to act on the information indicating that unconstitutional acts were occurring. Oppo. at 5.

Direct and Supervisory Liability

In his complaint, Plaintiff merely alleges that Defendant Arguilez violated his Eighth Amendment right to be free from cruel and unusual punishment "by failing to adequately train and supervise officers subordinate to them and by failing to properly investigate the incident or discipline the involved officers." Comp. at 15. The facts supporting Plaintiff's claims are limited to Defendant Arguilez's handling of the investigation after the incident. Id. at 9. Because Plaintiff does not allege that Defendant Arguilez was present during the alleged assault or that he was aware of the assault prior to it taking place such that he could have prevented the assault from occurring, Plaintiff has failed to state a claim that Defendant Arguilez personally participated in the alleged assault.

Plaintiff also has failed to state a claim of Eighth Amendment liability against Defendant Arguilez for his conduct as a supervisor. In both the complaint and his opposition, Plaintiff's allegations are focused on Defendant Arguilez's conduct after the incident. Comp. at 9, Oppo.

10

at 3-5. Plaintiff argues that Defendant Arguilez attempted to cover up the incident and suppress evidence by failing to include all of the inmate video interviews in his incident report, by failing to highlight or explain the discrepancies between the facts reported by the various defendants and those reported by Plaintiff and inmate witnesses, and by including false information regarding Plaintiff's injury. Oppo. at 3-5. However, Plaintiff does not provide any facts to support a causal connection between Defendant Arguilez's conduct and the assault. Id.; see also Comp. The asserted facts do not support an inference that Defendant Arguilez "set in motion" acts that resulted in others assaulting Plaintiff or that he refused to terminate acts that he knew would cause others to assault Plaintiff. See Starr, 652 F.3d at 1207-08. Similarly, Plaintiff does not allege any training or supervision by Defendant Arguilez of his subordinates that indicted an acquiescence in the constitutional deprivation. Id. Finally, Plaintiff has not pled any facts indicating that Defendant Arguilez implemented a policy that was the "moving force" behind the alleged assault or a policy that was constitutionally deficient and in and of itself a "repudiation of constitutional rights." Hansen, 885 F.2d at 646 (internal quotation marks and citation omitted); see also Comp. Accordingly, there is no evidence indicating that Defendant Arguilez knew about the alleged assault before it occurred or while it was occurring and Plaintiff has failed to plead facts stating a claim against Defendant Arguilez based on his conduct as a supervisor.

False Report Claim

The bulk of Plaintiff's claims against Defendant Arguilez for violating his Eighth Amendment right focus on Plaintiff's allegations that Defendant Arguilez conducted an inadequate investigation and prepared a false/inadequate post-assault report. Comp. at 9; Oppo. at 3-5. However, even if Plaintiff's allegations are true and Defendant Arguilez submitted a false post-incident report, this action does not rise to the level of an Eighth Amendment violation as the false report did not cause the alleged assault and Plaintiff does not allege that Defendant Arguilez was aware of the assault when it was occurring. See Villegas v. Schulteis, 2009 WL 3157519, at *5–6 (E.D. Cal. Sept. 28, 2009) (finding (1) allegations that a correctional officer lied in her report about where she was during plaintiff's attack were not sufficient for

plaintiff's Eighth Amendment claim as the officer was "only liable for her actions or inactions that could be said to have caused the attack to happen," (2) that while a correctional officer's failure to submit an accurate report and to attempt to cover up the assault to protect his fellow officer was wrongful, it did not rise to the level of an Eighth Amendment violation as the report came after the attack occurred and plaintiff did not allege that the officer was aware that a constitutional violation was taking place at the time of the assault, and (3) allegations that correctional officers failed to fully document plaintiff's injuries insufficient to state an Eighth Amendment claim because the failure occurred after the alleged assault and, therefore, could not have caused or contributed to the assault and that causing the participants in the attack to avoid punishment was not enough to state a claim); see also Ragsdale v. Flores, 2015 WL 6164908, at *6 (C.D. Cal. Sept. 11, 2015) (finding that defendant officer who allegedly participated in a cover up by filing a false report about the alleged assault failed to state a cognizable claim and noting that "[p]reparing a false report about an incident after it occurred cannot subject that individual to liability for the force used during the incident") (emphasis in original); and Poe v. Huckabay, 2010 WL 1663141, at *6 (E.D. Cal. Apr. 22, 2010) (denying plaintiff's claim that defendants violated his rights under the Eighth Amendment by filing false reports about his assault and noting that "[t]he filing of the false reports occurred after the attack. Therefore, the false reports cannot be said to have caused or contributed to the unconstitutional use of excessive force."). Because the report was prepared after the alleged use of excessive force ended, Plaintiff cannot state a claim against Defendant Arguilez for the unconstitutional use of excessive force, even if the report he authored contained material false statements.

Plaintiff further alleges that he suffered harm due to Defendant Arguilez's actions because the false investigation which was conducted after his interview "cleared the way for [P]laintiff to be charged with a rule violation report and additional punishments and restrictions being placed against [P]laintiff." Oppo. at 4. This, however, also fails to state a claim. While Plaintiff was charged with resisting a peace officer in the performance of his duties as a result of the incident [see Comp. at Exh. F], Plaintiff was found not guilty [see id. at Exh. H] and now fails to

allege any specific additional punishments or restrictions that he suffered as a result of the alleged false rules violation report.  <u>See</u> Comp.; <u>see</u> <u>also</u> Oppo.  Accordingly, Plaintiff has not stated an Eighth Amendment violation based on the allegedly false report prepared by Defendant Arguilez.

Failure to Investigate Claim

Next, Plaintiff alleges that Defendant Arguilez violated his constitutional rights "by failing to properly investigate the incident or discipline the officers involved."  Comp. at 15.  In his opposition, Plaintiff elaborates by stating that Defendant Arguilez "[f]ailed to conduct any investigation and instead turned a blind eye to and was deliberately indifferent to plaintiff's assault."  Oppo. at 4.  Again, Plaintiff's allegations, even if true, do not state a claim against Defendant Arguilez for the unconstitutional use of force because the alleged failure to investigate and discipline occurred after the assault ended and did not contribute to the constitutional violation.  <u>See</u> <u>Villegas</u>, 2009 WL 3157519, at *5-6.  In addition, "[t]here is also no constitutional right to require prison officials to investigate an inmate's grievances."  <u>Atwell v. Lavan</u>, 557 F. Supp. 2d 532, 548 (M.D. Pa. 2008) (citing <u>Davage v. United States</u>, 1997 WL 180336, *3, 1997 U.S. Dist. LEXIS 4844, at * 9 (E.D. Pa. Apr. 11, 1997)); <u>see</u> <u>also</u> <u>Manzanillo v. Jacquez</u>, 555 F. App'x 651, 653 (9th Cir. 2014) (finding that the "district court properly granted summary judgment on Manzanillo's claim alleging that defendants failed adequately to investigate his excessive force claims in violation of prison policy because that alleged failure does not constitute a violation of a federal right"); <u>Dixon v. Oleachea</u>, 2016 WL 3538367, at *5 (E.D. Cal. June 29, 2016) (stating that "a prisoner has no constitutional right to obtain an official investigation upon request.") (citing <u>Barkey v. Reinke</u>, 2010 WL 3893897, at *13 (D. Idaho Sept. 30, 2010)); <u>Koch</u>, 2006 WL 403818, at *5 (finding that "Plaintiff's allegations that defendants failed to accurately report and document the November 23, 2002 incident simply do not give rise to a claim for relief under federal law, due process, equal protection or otherwise" as Plaintiff does not have a constitutionally protected right to any particular documentation or investigation.); and <u>Young v. Chapman</u>, 2013 WL 2384233, at *4–5 (N.D. Cal. May 30, 2013) (dismissing plaintiff's claim that officers failed to properly investigate his administrative complaint for excessive force "[b]ecause

there is no federal constitutional right to a properly functioning appeal system and because the review and denial of an administrative appeal does not give rise to liability under § 1983.").  As such, Plaintiff has not alleged a constitutional violation.

Cover Up Claim

Finally, while Plaintiff suggests that Defendant Arguilez attempted to cover up the constitutional violation [see Oppo. at 3-4], "an allegation that the defendants participated in a cover up states a Section 1983 claim only if the cover up deprives the plaintiff of his right of access to courts by causing him to fail to obtain redress for the constitutional violation that was the subject of the cover up." Ragsdale, 2015 WL 6164908 at *6.  Here, Plaintiff has not been prevented from trying to obtain redress for his alleged assault as is evidenced by the fact that his case is pending in the federal court.  See id. (stating that "a cover up claim is not ripe when, as here, an action seeking redress for the underlying constitutional violation, i.e., excessive force, remains pending, and the cover up claim must be dismissed without prejudice.") (citing Karim–Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 625 (9th Cir.1988) (claim alleging police cover up of misconduct was premature when federal action challenging misconduct was pending and should be dismissed without prejudice) and Rose v. City of Los Angeles, 814 F.Supp. 878, 881 (C.D. Cal. 1993) (cover up claim dismissed without prejudice as premature given pendency of federal case based upon underlying alleged constitutional violation)).

Conclusion Eighth Amendment Claims

Plaintiff's allegations have not shown a causal link between Defendant Arguilez and the alleged violation of his Eighth Amendment right to be free from cruel and unusual punishment, including the use of excessive force.  See Henry v. Sanchez, 923 F. Supp. 1266, 1272 (C.D. Cal. 1996) ("A supervisory official, such as a warden, may be liable under Section 1983 only if he was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.").  All of the alleged misconduct attributed to Defendant Arguilez occurred after the alleged constitutional violation and cannot support the Eighth Amendment violation.  Accordingly, the Court **RECOMMENDS** that Plaintiff's Eighth Amendment claim against Defendant Arguilez be

14

**DISMISSED WITHOUT LEAVE TO AMEND**.  See Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (court may dismiss without leave to amend if the pleading cannot be cured by the addition of other facts).

First Amendment Retaliation Claim

In his opposition, Plaintiff argues that Defendant Arguilez retaliated against him for asserting an excessive force complaint against the guards by threatening to send him to the "'hole' (Administrative Segregation) ... depending on what plaintiff said against 'his' officers." Oppo. at 4.  Plaintiff states that Defendant Arguilez's statement demonstrated that he "became personally involved in the retaliation and subsequent conspiracy to beat [P]laintiff for exercising his First Amendment right."  Id.  Plaintiff further alleges that the underlying assault and lack of investigation into the assault, was in retaliation for exercising his First Amendment rights.  Id. These allegations could potentially state a claim as prisoners have a constitutional right to file complaints or grievances against prison officials without being retaliated against for doing so. Watison v. Carter, 668 F.3d 1108, 1114–15 (9th Cir. 2012).

In order to state a retaliation claim, however, Plaintiff must assert facts showing that (1) Defendant Arguilez took adverse action against him (2) because of (3) Plaintiff's protected conduct (the excessive force complaint), and that such action (4) chilled the exercise of Plaintiff's First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.  Id.; see also Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005).  "At the pleading stage, the 'chilling' requirement is met if the 'official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'"  Walker v. California Dep't of Corr., 2014 WL 268525, at *2 (E.D. Cal. Jan. 22, 2014) (citing Rhodes, 408 F.3d at 568 quoting Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)). Direct and tangible harm will also "support a First Amendment retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights." Id. (citing Rhodes, at 568). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action.  Id. (quoting Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009), citing Rhodes, 408 F.3d at 568, n. 11)).  That the

retaliatory conduct does not keep a plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage.  Watison, 668 F.3d at 1114–15 (citing Rhodes, 408 F.3d at 569).

Here, Plaintiff's complaint merely alleges that Defendant Arguilez stated "[y]ou may go to the hole depending on what you say about my officers" before interviewing Plaintiff about his claim of unnecessary force.  Comp. at 9.  This statement alone does not state a claim for unconstitutional retaliation as it does not satisfy the elements of the cause of action as set forth above.  There are many legitimate reasons why such a statement would be made and the statement alone does not establish that Defendant Arguilez took adverse action against Plaintiff because of the excessive force complaint and that the action chilled Plaintiff's exercise of his First Amendment rights.

While an allegation that an officer has filed a false report can state claim where there is an allegation that a false report was filed in retaliation for the exercise of a constitutional right, Plaintiff has not made such an allegation.  See Koch v. Austin, 2006 WL 403818, at *5 (E.D. Cal. Feb. 16, 2006) (citing Pratt v. Rowland, 769 F.Supp. 1128, 1134 (N.D. Cal. 1991) and Jones v. Coughlin, 45 F.3d 677 (2d Cir. 1995)).  Here Plaintiff does not allege that Defendant Arguilez's false report was written in retaliation for the exercise of his constitutional rights.  Instead, Plaintiff states in his opposition that the purpose of the false report was an attempt to cover up the misdeeds of his correctional officers.  Oppo. at 4.  As stated above, the allegation that Defendant Arguilez participated in a cover up fails to state a claim here where Plaintiff has not been deprived of his right of access to the courts.  See Section C pg. 14 above; see also Ragsdale, 2015 WL 6164908 at *6 (finding that plaintiff failed to allege that defendants filed false report in retaliation for his exercise of a protected right and that instead, plaintiff alleged that defendants filed false charges to cover up their own violation of plaintiff's constitutional rights and that no cognizable false report claim was stated.).

Accordingly, the Court **RECOMMENDS** Plaintiff's First Amendment retaliation claim against Defendant Arguilez be **DISMISSED WITH LEAVE TO AMEND**.  See Ferdik, 963 F.2d at 1261 ("before dismissing a pro se complaint the district court must provide the litigant with

16

notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively.").

### D. __Defendant Nevarez__

Plaintiff alleges that Defendant Nevarez violated his First Amendment right to free speech "through a conspiracy to chill the effects of plaintiff's complaints through intimidation, harassment, retaliation, and abuse." Comp. at 14. Plaintiff further alleges that Defendant Nevarez violated his Eighth Amendment right to be free from cruel and unusual punishment by intimidating, harassing, abusing, and assaulting him. Id. at 15. Finally, Plaintiff alleges that Defendant Nevarez collaborated with Defendants LaRocco and Silva and wrote a false Crime Incident Report. Id. at 9. Defendants contend that Defendant Nevarez has not yet been served and that "the Complaint lacks any facts showing that Nevarez used excessive force against Plaintiff."[4] MTD at 6. Defendants further contend that Plaintiff has failed to provide any factual allegations showing retaliation and that prisoners "do not have a constitutional right to be free from falsified disciplinary records." Id. at 6-7. Plaintiff disagrees and argues that Defendant Nevarez is not liable just for making a false report, but for conspiring with other Defendants to deprive Plaintiff of his constitutional rights and for not upholding his duties as an officer. Oppo. at 6. Plaintiff alleges that Defendant Nevarez participated in the conspiracy by not reporting the misdeeds of Defendants Silva and LaRocco and by submitting a false report to help them cover up their misdeeds and that his conduct therefore constitutes deliberate indifference. Id.

---

[4] In their motion to dismiss, Defendants state that Defendant Nevarez has never been served. MTD at 6. In his opposition, Plaintiff also states that Defendant Nevarez has not been properly served "and is not properly before this court without a waiver of service." Oppo. at 5. Plaintiff states that due to the lack of service, the claims against Defendant Nevarez are premature and not properly before the Court. Id. at 6. Plaintiff requests that the Court "order the Attorney General to waive the service requirement in order to proceed in relation to Nevarez." Id. A review of the Court's docket reveals that Defendant Nevarez was properly served after Defendants filed their motion to dismiss. See ECF No. 21 (process receipt and return for R. Nevarez from David V. Carson stating that R. Nevarez was personally served on December 28, 2016 at 9:04 a.m.). Accordingly, Plaintiff's request for an order requiring Defendant to waive service is hereby **DENIED AS MOOT**.

16cv1736-JLS (BLM)

Plaintiff's complaint names Defendant Nevarez in his individual capacity and states that he is a Correctional Officer. Comp. at 3. Although Plaintiff alleges that Defendant Nevarez violated his First and Eighth Amendment rights, the only alleged factual misconduct by Defendant Nevarez is that he wrote a fabricated Crime Incident Report stating that Plaintiff resisted the prison staff and refused to follow orders. Id. at 9, 14-15, Exh. D at 46. As stated above, the filing of a false post-incident report does not rise to the level of an Eighth Amendment violation. See Ragsdale, 2015 WL 6164908, at *6. Thus, even if the report is false, the writing and submission of the false report, which occurred after the assault, does not support a claim against Defendant Nevarez for the unconstitutional use of force because his false report was not the cause of, and did not contribute to, Plaintiff's alleged assault. See Villegas, 2009 WL 3157519 at *5–6. Similarly, Plaintiff's allegation that Defendant Nevarez's failure to report the actions of Defendants Silva and LaRocco to his supervisors violates the Eighth Amendment fails to state a claim as that alleged failure occurred after the assault and did not cause the assault. Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Eighth Amendment claim on these grounds be **GRANTED WITHOUT LEAVE TO AMEND**.

Plaintiff also argues that Defendant Nevarez violated his Eighth Amendment rights by failing to "stop defendant." Oppo. at 6. It is unclear from this statement if Plaintiff is arguing that Defendant Nevarez should have physically stopped Defendants from assaulting him or if he could have stopped the deprivation of his constitutional rights by writing and submitting an accurate incident report. The latter has already been addressed above. If it is the former, Plaintiff's complaint fails to state a claim. In order for Defendant Nevarez to be liable, he "must have been in a position where he had a reasonable opportunity to prevent the attack from occurring" and must have been aware that Plaintiff's constitutional rights were being violated. Although no additional facts are alleged in the complaint against Defendant Nevarez, Plaintiff attached Defendant Navarez' report to the complaint. Comp. at Exh. D. at 46. In the report, Defendant Navarez explained that he was a "yard observation officer [and] received a radio call to put the yard down." Id. Defendant Navarez used the public address system to order all inmates on the yard to get down and assume a prone position. Id. Defendant Navarez observed

16cv1736-JLS (BLM)

that all inmates other than Plaintiff complied with the order. Id. Defendant Navarez detailed the actions he observed Plaintiff and other officers performing and concluded by stating that he "continued to provide yard coverage until the code was cleared." Id. at 46-47. While the report details what Defendant Navarez did and saw, Plaintiff does not allege that Defendant Navarez actually participated in the alleged assault, that he was close enough to the interaction so that he could hear any conversation or know that Plaintiff communicated that he was attempting to comply with Defendants LaRocco and Silva's orders and assume the prone position when he was assaulted, that there was any reason for him to believe that the interaction was unconstitutional, or that he had the ability to prevent the alleged assault. Id. at 8-9. Plaintiff fails to describe any personal participation by Defendant Nevarez in the assault or how Defendant Nevarez's action or inaction could have caused or prevented the assault. Plaintiff has failed to show "an affirmative link between the injury and the conduct" of Defendant Nevarez or that Defendant Nevarez participated in the alleged violation. Harris, 652 F. Supp. 2d at 1034 (D. Ariz. 2009).

If Defendant Nevarez believed that Defendants LaRocco and Silva were using legitimate force at the time of the alleged assault, he is not liable. Villegas, 2009 WL 3157519 at *5–6 (finding that plaintiff failed to show that defendant failed to prevent his attack through deliberate indifference where plaintiff did not allege that defendant was aware that a constitutional violation was taking place or that  defendant was in a reasonable position to prevent the attack from occurring). Plaintiff has not alleged that Defendant Nevarez was aware of the constitutional violation taking place or that he was in a position to prevent the attack from occurring and accordingly, has failed to state a constitutional violation against Defendant Nevarez. The Court therefore **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Eighth Amendment claim on this ground be **GRANTED WITH LEAVE TO AMEND**.

Finally, Plaintiff alleges that Defendant Nevarez and his co-defendants "violated plaintiff's First Amendment right to Free Speech collectively through a conspiracy to chill the effects of plaintiff's complaints through intimidation, harassment, retaliation and abuse." Comp. at 14. Plaintiff does not provide any facts alleging precisely what misconduct Defendant Nevarez committed, other than preparing and submitting the allegedly false report. Id. at 9, 14. In his

opposition, Plaintiff reiterates the allegation that Defendant Nevarez wrote a false report about the incident and then generally states Defendant Nevarez was involved in a conspiracy "to deprive [P]laintiff of his constitutional right to be free from retaliation" and failed to perform his "sworn duties as a peace officer and either stopping defendant, or reporting their actions to his superiors after the fact." Oppo. at 6.

Initially, Plaintiff has failed to state a claim for conspiracy. "To state a conspiracy claim under § 1983, a plaintiff must 'show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional violation.'" Beattie v. Armenta, 2015 WL 10319088, at *9 (S.D. Cal. July 27, 2015) (quoting Garcia v. Grimm, 2011 U.S. Dist. LEXIS 20522, at *24 (S.D. Cal. Mar. 2, 2011)). For liability, each participant "must at least share the common objective of the conspiracy" and "[a] defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions." Id. (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir.1989) and Gilbrook v. City of Westminster, 177 F.3d 839, 856–57 (9th Cir. 1999)). A "plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights." Id. (citing Miller v. Cal. Dep't of Soc. Servs., 355 F.3d 1172, 1177 n.3 (9th Cir. 2004)). Here, Plaintiff has failed to allege facts showing an agreement or meeting of the minds between Defendant Nevarez and the other Defendants to violate Plaintiff's constitutional rights. In addition, as discussed above, Plaintiff has not adequately alleged that his constitutional rights were violated as is required to state a claim for conspiracy. Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's conspiracy claim against Defendant Nevarez be **GRANTED WITH LEAVE TO AMEND**.

Second, filing a false report can state a claim for retaliation but only if the report was prepared in retaliation for the exercise of a constitutional right. Koch, 2006 WL 403818, at *5. Here, Plaintiff has not alleged such facts. Rather, the report establishes that Defendant Nevarez prepared it on the same day that the incident occurred. Comp. at Exh. D. at 46-47. Unlike the claims against Defendant Arguilez, Plaintiff does not allege that Defendant Nevarez threatened

Plaintiff or informed him that he would be filing a false report in retaliation for some protected conduct. In fact, the complaint does not contain any facts indicating that Defendant Nevarez had any interactions with Plaintiff after the assault or that Defendant Nevarez conspired with Defendants LaRocco or Silva; rather it just alleges that Defendant Nevarez submitted a timely report that contradicts Plaintiff's version of events. This is insufficient to state a claim for retaliation based on Plaintiff's exercise of a constitutional right. If the allegation is that the report was written to cover up the alleged assault, that fails to state a claim as well. Ragsdale, 2015 WL 6164908 at *6 ("an allegation that the defendants participated in a cover up states a Section 1983 claim only if the cover up deprives the plaintiff of his right of access to courts by causing him to fail to obtain redress for the constitutional violation that was the subject of the cover up."). Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's retaliation claim against Defendant Nevarez be **GRANTED WITH LEAVE TO AMEND**.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an order: (1) approving and adopting this Report and Recommendation, (2) granting Defendants' Motions to Dismiss.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than June 16, 2017**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with this Court and served on all parties **no later than July 7, 2017**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated: 5/18/2017

Hon. Barbara L. Major
United States Magistrate Judge

21

16cv1736-JLS (BLM)